IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| KIMBERLY L. TAYLOR, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CASE NO.: 1:12-CV-184 (WLS) |
| | : |
| LEE COUNTY SHERIFF'S | : |
| OFFICE, and BOARD OF COUNTY | : |
| COMMISSIONERS OF LEE COUNTY, | : |
| | : |
| Defendants. | : |
| | : |

**ORDER**

Presently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 18). For the following reasons, Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED.**

**I.   PROCEDURAL HISTORY**

Plaintiff Kimberly L. Taylor, an African-American female, began working for the Lee County Sherriff's Office on September 20, 1999, and remains employed there to date. (Doc. 1 at ¶¶ 8 & 9.) On December 4, 2012, Plaintiff filed a Complaint in the above-captioned matter, asserting a claim of race discrimination under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.* (*See* Doc. 1.) On January 1, 2013, Defendants filed an Answer. (Doc. 7.) On April 19, 2013, Plaintiff amended her Complaint to add a claim of retaliation under Title VII. (Doc. 13.)

After discovery, Defendants moved for summary judgment. (Doc. 18.) In support of summary judgment, Defendants contend: (1) they are not the proper parties for this suit; (2) Plaintiff failed to exhaust administrative remedies; (3) Plaintiff did not suffer an adverse employment action and therefore cannot recover under Title VII for race discrimination; (4) Plaintiff failed to demonstrate a causal relationship between her

1

EEOC charge and demotion; and (5) Defendants have a legitimate, non-discriminatory reason for Plaintiff's demotion which Plaintiff has not rebutted.  (*See* Doc. 19.)  On March 21, 2014, Plaintiff filed a Response in opposition to Defendants' Motion for Summary Judgment.  (Doc. 24.)  On April 18, 2014, Defendants filed a Reply.  (Doc. 27.)  Thus, the above-referenced Motion is ripe for review.  *See* M.D. Ga. L.R. 7.3.1(a).

## II.     SUMMARY JUDGMENT STANDARD
### A.     Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Grimes v. Miami Dade Cnty.*, No. 12-14291, 2014 WL 114125, *2 (11th Cir. Jan. 14, 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the

ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### B.     Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Defendants properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (*See* Docs. 18-20.) Likewise, Plaintiff filed the proper

3

response to Defendants' statement of material facts. (*See* Doc. 25.) Having established the applicable standards, the Court will proceed to the facts.

## III.    RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint, as amended (Docs. 1 & 13); Defendants' Answer (Doc. 7); Defendants' Statement of Undisputed Facts (Doc. 20); and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. 25); and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322-23.

On September 20, 1999, Plaintiff, an African-American female, began working for the Sheriff of Lee County who, at that time, was Harold Breedon. (Docs. 20 at ¶¶ 1-3, 25 ¶¶ 1-3.) On January 1, 2009, Reggie Rachals was sworn in as Sheriff of Lee County. (Docs. 20 at ¶ 4, 25 at ¶ 4.) Sheriff Rachals hired Plaintiff to work in the Lee County Jail as a detention officer. (*Id.*) Sheriff Rachals has not opted into the Lee County civil service system. (Docs. 20 at ¶ 5, 25 at ¶ 5.)

Major Sandra Pressley-Fordham has been employed by Sheriff Rachals as the Jail Administrator for the Lee County Jail. (Docs. 20 at ¶ 6, 25 at ¶ 6.) Captain Jennifer Dunbar has been employed by Sheriff Rachals as the Assistant Jail Administrator for the Lee County Jail. (Docs. 20 at ¶ 7, 25 at ¶ 7.) The Jail Administrator and Assistant Jail Administrator are responsible for assigning detention officers to particular shifts. (Docs. 20 at ¶ 8, 25 at ¶ 8.) The Lee County Jail operates a day shift and night shift. (Docs. 20 at ¶ 9, 25 at ¶ 9.) The detention officers who work at the Jail are divided into teams, and each team has a supervisor who is in charge of that team. (Docs. 20 at ¶ 10, 25 at ¶ 10.) Until recently, it is typical for a team of detention officers to work the day shift for three-and-one-half months, and then work the night shift for that period of time. (Docs. 20 at ¶ 11, 25 at ¶ 11.)

Plaintiff worked the night shift from October 1, 2010, until December 12, 2010. (Docs. 20 at ¶ 12, 25 at ¶ 12.)  During that time, Plaintiff was working on a team that was supervised by Sergeant Marie O'Brien. (Docs. 20 at ¶ 13, 25 at ¶ 13.)  On or about December 13, 2010, Plaintiff was transferred to a team that was supervised by Sergeant Matthew Pearce.  (Docs. 20 at ¶ 14, 25 at ¶ 14.)  The team of detention officers supervised by Sgt. Pearce began working the night shift on December 13, 2010, and continued to work that shift until March 17, 2011.  (Docs. 20 at ¶ 15, 25 at ¶ 15.)  Plaintiff was therefore on the night shift from October 1, 2010 until March 17, 2011.  (Docs. 20 at ¶ 16, 25 at ¶ 16.)

On April 13, 2011, Plaintiff signed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and named the Lee County Sheriff's Office as her employer.  (Docs. 20 at ¶ 17, 25 at ¶ 17.)  In that charge, she claimed that the Sheriff's Office discriminated against her when it denied her a promotion to sergeant on September 15, 2010.  (Docs. 20 at ¶ 18, 25 at ¶ 18.)  She also identified her assignment to the night shift as a basis for her claim of discrimination.  (Docs. 20 at ¶ 19, 25 at ¶ 19.)  Plaintiff's assignment to the night shift did not result in a decrease in pay, change in position, or loss of prestige.[1]   (Docs. 20 at ¶¶ 20-22, 25 at ¶¶ 20-22.)  David Craver, a Caucasian male, worked at the Lee County Jail as a detention officer, and worked the night shift from December 2, 2009 until June 27, 2010.  (Docs. 20 at ¶¶ 24 & 25, 25 at ¶¶ 24 & 25.)  Melissa Rouse, a Caucasian female, worked at the Lee County Jail as a detention officer, and worked the night shift from July 2, 2010 until December 11, 2010.  (Docs. 20 at ¶¶ 26 & 27, 25 at ¶¶ 26 & 27.)  Regina Raburn, a Caucasian female, worked at the Lee County Jail as a detention officer, and worked the night shift from January 26, 2011 until June 21, 2011.  (Docs. 20 at ¶¶ 28 & 29, 25 at ¶¶ 28 & 29.)

In August 2011, Major Pressley-Fordam or Captain Dunbar recommended that Plaintiff be promoted to shift supervisor and Sheriff Rachals approved the promotion. (Docs. 20 at ¶ 30, 25 at ¶ 30.)  On August 23, 2011, Plaintiff was promoted to shift

---

[1] Plaintiff's assertion that she "believe[s] that [her] night shift assignment was less prestigious than [her] day shift assignment" is not evidence of a loss of prestige.

5

supervisor and given supervisory duties, but a notice announcing the promotion was not distributed to other employees. (Docs. 20 at ¶ 31, 24-1 at ¶ 6, 25 at ¶ 31.) Following her promotion to shift supervisor, Plaintiff had the same duties and responsibilities as a sergeant. (Docs. 20 at ¶ 32, 25 at ¶ 32.)

On September 6, 2011, Captain Dunbar received a memorandum from Sergeant Gina Barrett that detailed problems related to the handling of cash bonds and bond fees. (Docs. 20 at ¶ 33, 25 at ¶ 33.) After receiving the memorandum, Captain Dunbar discovered that Plaintiff was responsible for the improper handling and verbally counseled her regarding that issue. (Docs. 20 at ¶ 34, 25 at ¶ 34.) On December 15, 2011, Plaintiff released John Christopher Rycroft before the completion of his sentence. (Docs. 20 at ¶¶ 35 & 36, 25 at ¶¶ 35 & 36.) On or about January 6, 2012, a citizen complained to Sergeant Marie O'Brien about the booking of an inmate, and Sgt. O'Brien delivered a report to Captain Dunbar on that issue. (Docs. 20 at ¶ 37, 25 at ¶ 37.) As a result of the complaint and report, an investigation was conducted regarding the Lee County Jail's booking process. (Docs. 20 at ¶ 38, 25 at ¶ 38.) During the course of the investigation, it was determined that the detention officers on Plaintiff's team were not booking inmates in a timely manner and some inmates had not been taken before a judge for their first appearance on the first available date. (Docs. 20 at ¶¶ 39 & 40, 25 at ¶¶ 39 & 40.) The booking of at least one inmate was untimely because Plaintiff was addressing an emergency situation. (Doc. 24-1 at ¶ 14.) Following the referenced investigation, Captain Dunbar gave Plaintiff a verbal warning about allowing inmates to remain in booking without being processed, and instructed Plaintiff that inmates who arrived at the Jail before 3:30 p.m. were to be presented to the judge for a first appearance that same day.[2] (Docs. 20 at ¶ 41, 25 at ¶ 41.)

---

[2] "All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56. As to the referenced fact as alleged by Defendants, Plaintiff responded that such fact was "denied" but did not include a specific citation to the record. The Court has reviewed the record, including Plaintiff's affidavit, and has not found any evidence to the contrary. As such, the Court finds that the referenced fact has been admitted.

On January 20, 2012, Plaintiff improperly released an inmate without first notifying the victim, in accordance with Georgia law.[3]  (Docs. 20 at ¶ 42 & 43, 24-1 at ¶ 13, 25 at ¶ 42 & 43.)  On February 23, 2012, Plaintiff contacted Captain Dunbar and advised her of a hostile situation presented by inmate Christopher Lehman.  (Docs. 20 at ¶¶ 44 & 48, 25 at ¶¶ 44 & 48.)  During that conversation, Captain Dunbar reminded Plaintiff that Plaintiff was the only person who could make a determination about whether the use of force was warranted and that, if force was used, a report needed to be prepared that explained the need for the use of force.  (Docs. 20 at ¶ 49, 25 at ¶ 49.)  At that time, Captain Dunbar also reminded Plaintiff that, if force was used, photographs of the inmate should be taken.  (Docs. 20 at ¶ 50, 25 at ¶ 50.)

On February 24, 2012, Captain Dunbar learned that force had been used on the inmate, but the forms were incomplete and photographs were not attached.  (Docs. 20 at ¶¶ 51 & 52, 25 at ¶¶ 51 & 52.)  Cpt. Dunbar learned that photographs had not been emailed to the Lee County Jail's medical department.  (Docs. 20 at ¶ 53, 25 at ¶ 53.)  Cpt. Dunbar instructed Sergeant O'Brien to contact Plaintiff and all of the officers on her team and instruct them to return to the Jail to complete their reports.  (Docs. 20 at ¶ 54, 25 at ¶ 54.)  That same day, after Plaintiff and her team returned, they were instructed to complete the forms and not to leave until Cpt. Dunbar approved their reports.  (Docs. 20 at ¶¶ 55-57, 25 at ¶¶ 55-57.)  Notwithstanding that instruction, Plaintiff left for a doctor's appointment before meeting with Cpt. Dunbar.  (Docs. 20 at ¶ 58, 25 at ¶ 58.)  On February 27, 2012, Plaintiff met with Cpt. Dunbar and Major Pressley-Fordham to discuss the handling of the referenced inmate.  (Docs. 20 at ¶ 59, 25 at ¶ 59.)  Based on a concern about the manner in which Officer Jeffery McCray handled that incident, Cpt. Dunbar intimated to Plaintiff that Officer McCray should be assigned to work in the control booth in the pod.  (Docs. 20 at ¶¶ 60 & 61, 25 at ¶¶ 60 & 61.)  Despite that intimation, Plaintiff did not assign Officer McCray to work in the pod.  (Docs. 20 at ¶ 62, 25 at ¶¶ 61 & 62.)

---

[3] Plaintiff asserts that she did not receive an Employee Warning Notice for that infraction, but admits that she failed to notify the victim in accordance with Georgia law.  The Court construes the facts as asserted by Plaintiff in her affidavit because she is the nonmovant on summary judgment.  *See* Fed. R. Civ. P. 56(c).

7

On March 5, 2012, Captain Dunbar was informed that Plaintiff was unable to enter information about a missing juvenile into the Georgia Crime Information Center ("GCIC") although Plaintiff had been trained on the use of GCIC.  (Docs. 20 at ¶¶ 63 & 64, 25 at ¶¶ 63 & 64.)  On March 7, 2012, Plaintiff was relieved of her supervisory duties and suspended for two days because she failed to perform her duties as a supervisor and GCIC operator, and disobeyed a direct order that she had received from Captain Dunbar.  (Docs. 20 at ¶¶ 66-70, 25 at ¶¶ 66-70.)  On March 23, 2012, Plaintiff filed a supplemental Charge of Discrimination with the EEOC, and alleged that she was the subject of retaliation.  (Docs. 20 at ¶ 71, 25 at ¶ 71.)  The retaliation claim was based on Plaintiff's suspension and the removal of her supervisory duties.  (Docs. 20 at ¶ 72, 25 at ¶ 72.)  On September 6, 2012, the EEOC issued a notice of right to sue and, on December 4, 2012, Plaintiff filed suit against the Sheriff's Office and the Board of County Commissioners of Lee County.  (Docs. 20 at ¶ 73, 25 at ¶ 73.)

## ANALYSIS

As a preliminary matter, the Court finds that this suit should have been brought against the sheriff in his official capacity, not against Lee County, the Lee County Sheriff's Office, or the Lee County Board of Commissioners.  *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  Nonetheless, the Court will analyze Plaintiff's Title VII claims of race discrimination and retaliation.

### I.   Exhaustion of administrative remedies

Plaintiff filed a Charge of Discrimination with the EEOC on April 13, 2011, and alleged that she was denied a promotion on September 15, 2010, and assigned to the night shift on December 1, 2010.  (Doc. 1-1 at 1.)  She claims that those actions were taken because of her race.  (*Id.*)  Defendants argue that Plaintiff's charge of discrimination as to denial of a promotion was not timely because the denial of a promotion is a discrete act and the relevant charge should have been filed within 180 days of that act.  (Doc. 19 at 8-9.)  Plaintiff argues that her intake form, which was completed within the 180-day period, should be treated as a properly and timely filed charge based on the EEOC's treatment of the intake form.  (Doc. 24 at 6-7.)  Defendants

8

reply that Plaintiff's intake form is not sufficient to constitute a properly and timely filed charge because it does not fully comply with EEOC regulations. (Doc. 27 at 2-3.)

To exhaust administrative remedies, a plaintiff generally must file a charge of discrimination within 180 days of the allegedly unlawful act. *See* 42 U.S.C. § 2000e-5(e)(1). "In determining whether claims are timely, courts must distinguish between allegations which charge discrete acts of discrimination or retaliation from allegations that charge repeated acts or events centering on discrimination, intimidation, and ridicule." *Freeman v. City of Riverdale*, 330 F. App'x 863, 866 (11th Cir. 2009) (citing *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008)). Discrete acts, such as the denial of promotion allegation made by Plaintiff, "are subject to time-bar if a charge is not filed within 180 days." *Id.* (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008)). Because Plaintiff was denied a promotion on September 15, 2010, to have been timely, Plaintiff should have filed a charge before March 14, 2011. Her formal Charge of Discrimination was not filed with the EEOC until April 13, 2011. Thus, she can only be deemed to have filed a timely charge as to her denial of promotion claim if her Intake Questionnaire, filed in December 2010, constitutes a timely charge.

"In addition to the information required by the regulations[,] if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). The EEOC requires a charge to "be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. To be verified, a charge must be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." *Id.* § 1601.3(a).

The Court finds that Plaintiff's Intake Questionnaire cannot be considered a valid charge. Plaintiff's Intake Questionnaire is not verified as required by the referenced regulations. Further, unlike the Intake Questionnaire in *Holowecki*, Plaintiff's Intake

9

Questionnaire does not contain a call to action. The fact that the EEOC sent a letter to Plaintiff following the Intake Questionnaire that indicated that the document she submitted "constitutes a charge of employment discrimination" is of no import. The EEOC sent the same form letter to the plaintiff in *Pittman v. Pediatric Servs. Of Am.*, 7:11-CV-159 (HL), 2012 WL 4794370 (M.D. Ga. Oct. 9, 2012), but such was found to be insufficient because the Intake Questionnaire did not contain a call to action and therefore could not be reasonably construed as "request[ing] the [EEOC] to activate its machinery and remedial processes." *See Holowecki*, 552 U.S. at 402. For those reasons, Defendants are entitled to summary judgment as to Plaintiff's denial of promotion claim for failure to exhaust administrative remedies.

## II. Race discrimination

When a plaintiff seeks to prove race discrimination through circumstantial evidence, as does the Plaintiff in the instant case (*see* Doc. 24 at 3), the Court is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Under that framework, in order to establish a prima facie case of race discrimination under Title VII, Plaintiff must show that she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly situated employees outside of her protected class, or was replaced by someone outside of her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a prima facie case of discrimination, a presumption of discrimination is created, and the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If the defendant produces such evidence, the plaintiff must demonstrate that the employer's stated reason is pretext for discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

### A. Adverse employment action

Defendants assert that Plaintiff has not alleged or made a showing that she suffered an adverse employment action. Defendants argue that the only employment action properly exhausted by charge to the EEOC relates to Plaintiff's assignment to the night shift, but placement on the night shift is not an adverse employment action under the circumstances of this case. (Doc. 19 at 11-12.) Plaintiff argues that the assignment to the night shift was an adverse employment action "because, as Plaintiff had explained to Major Fordham, Plaintiff had an ill spouse that Plaintiff hoped to be able to be home with to assist him with his health recovery." (Doc. 24 at 8.)

"[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). "[A] purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (citations and emphasis omitted). In this case, Plaintiff's reasons for preferring the day shift—assisting her ill spouse and spending more time with her family—are purely personal and do not involve a demotion in form or substance. There has been no credible evidence submitted that suggests that Plaintiff suffered a material loss of pay, prestige, or other quantifiable benefit. For those reasons, the Court finds that Plaintiff failed to demonstrate that she suffered an adverse employment action as to her referenced claim. For those reasons, Defendants are entitled to summary judgment as to Plaintiff's race discrimination claim.

### III.  Retaliation

Next, Plaintiff's retaliation claim alleges that Defendants retaliated against her for filing the April 13, 2011 charge by removing her supervisory duties and suspending her for two days. (*See* Docs. 13-1 & 13-2.) "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some

causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)). "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citing *Olmsted*, 141 F.3d at 1460).

Defendants argue that Plaintiff failed to establish a causal relationship between the EEOC charge, which was filed on April 13, 2011, and the adverse employment action, which occurred when Plaintiff's supervisory duties were removed on March 7, 2012. (Doc. 19 at 14-15.) In response, Plaintiff asserts that she was never formally promoted and, prior to filing the first charge of discrimination she "had virtually no disciplinary action." (Doc. 24 at 10.) Plaintiff maintains, however, that, after she filed the first charge, she suffered various adverse employment actions over a period of time, including numerous reprimands while in her supervisory role. (*Id.* at 11-13.) In reply, Defendants state that that Plaintiff can only claim that "she was subjected to retaliation when she was: (1) removed from her supervisory position; (2) transferred to another shift; and (3) suspended for two days" because all other bases were not administratively exhausted. (Doc. 27 at 6.)

"A judicial complaint is limited by the scope of the EEOC investigation 'which can reasonably be expected to grow out of the charge of discrimination.' " *Penaloza v. Target Corp.*, 549 F. App'x 844, 848 (11th Cir. 2013) (citing *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994)). Plaintiff's Charge of Discrimination that related to retaliation stated that the actions taken against her that constituted retaliation were "being removed from my supervisory position and moving to another shift" and being "suspended for 2 days." (Doc. 13-2 at 3.) Plaintiff's Charge did not mention reprimands. All of the actions identified in the charge took place at the end of Plaintiff's tenure as shift supervisor, but the reprimands took place over the course of Plaintiff's tenure as shift supervisor. Because the reprimands took place over the course of Plaintiff's time as shift supervisor, an investigation of those reprimands could not have

12

reasonably been expected to grow out of the charge of discrimination, which related only to actions that took place at the end of the time Plaintiff was in that position. For that reason, the Court will only consider Plaintiff's removal from the supervisory position, move to another shift, and suspension for two days.

The Court finds that all actions taken against Plaintiff were entirely unrelated to her Charge of Discrimination. The race discrimination Charge was filed with the EEOC on April 13, 2011. Plaintiff was given supervisory duties in August 2011, approximately four months after her first charge of discrimination. As noted by Plaintiff, she was not given a formal promotion. (Doc. 29-1 at 13-14.) Instead, she was "put . . . in a supervisory position to see if [she] could do the job." (*Id.*) After numerous documented failures on Plaintiff's behalf to properly perform her duties, her supervisory duties were taken away. Plaintiff failed to perform her duties on multiple occasions, and many of those failures resulted only in counseling with supervisors. It was not until she disregarded instructions from supervisors that Plaintiff's supervisory duties were removed and she was suspended for two days on March 5, 2012. Those actions, unlike being moved to another shift, are adverse employment actions. However, they were not taken until nearly eleven months after the Charge with the EEOC was filed. Plaintiff's only argument as to causation, other than the arguments that relate to actions that cannot be considered due to the failure to administratively exhaust, is that the temporal proximity of the EEOC charge and the adverse employment action evidence a causal relationship. Eleven months, without more, is not sufficiently temporally proximate to support a finding of causation. *See Jiles v. United Parcel Sev.*, 360 F. App'x 61, 65-66 (11th Cir. 2010) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)) (noting that, "[i]n the absence of other evidence tending to show causation, temporal proximity must be 'very close,' " and "[a] three-to-four-month period between the protected activity and the adverse employment action is 'not enough' to show 'very close' temporal proximity.").

Furthermore, even if the Court were to consider Plaintiff's various reprimands, Defendants have offered legitimate, non-discriminatory reasons for the reprimands and

13

Plaintiff has not rebutted those reasons.  Defendants have submitted evidence that Plaintiff was reprimanded for various infractions.  Plaintiff's only argument that the reprimands were retaliatory is that Caucasian employees committed the same infractions but were not punished to the same degree as Plaintiff.  "To establish a comparator in the disciplinary context, the quantity and quality of a comparator's misconduct must be nearly identical to the plaintiff's misconduct."  *Aristyld v. City of Lauderhill*, 543 F. App'x 905, 907 (11th Cir. 2013) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).  "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)).

The evidence is undisputed that Plaintiff (1) improperly handled bond fees and cash bonds that had been delivered to the Lee County Jail; (2) released an inmate before he completed his sentence; (3) untimely booked an inmate; (4) failed to notify a victim of an inmate's release as required by Georgia law; (5) failed to complete a report before leaving the Jail; (6) left work after being instructed to return and wait to speak to Captain Dunbar; and (7) failed to assign Officer McCray to work in the control booth in the pod notwithstanding a supervisor's intimation to do so.  Plaintiff asserts that, when Caucasian employees committed those same offenses, they were not punished to the same extent that she was punished.  Plaintiff has not introduced any evidence that any other officer is a proper comparator, or that any other employee of the Lee County Jail who was in a supervisory position committed any of the infractions outlined above.[4]  For that reason, Plaintiff has failed to rebut Defendants' legitimate, nondiscriminatory reasons for the referenced adverse employment actions and has failed to identify a similarly situated comparator who received less severe discipline for similar conduct.

---

[4] Plaintiff's assertion in her affidavit regarding other employees who committed similar infractions but were not punished is not competent evidence because the affidavits do not establish that Plaintiff had personal knowledge of those events.

14

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED.** It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by her Complaint, as amended (Docs. 1 & 13), and **JUDGMENT** shall be entered in favor of Defendants.

**SO ORDERED**, this  6th  day of June 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**